UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY BROWN,                                    Case No. 07-15418

            Plaintiff,                      Victoria A. Roberts
                                                 United States District Judge

v.

                                                 Michael Hluchaniuk
COMMISSIONER OF                                   United States Magistrate Judge
SOCIAL SECURITY,

            Defendant.
_____/

### REPORT AND RECOMMENDATION
### CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 10, 12)

## I.    PROCEDURAL HISTORY

    A.    <u>Proceedings in this Court</u>

On December 20, 2007, plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits. (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Victoria A. Roberts referred this matter to Magistrate Judge Charles E. Binder for the purpose of reviewing the Commissioner's decision denying plaintiff's claim for a period of disability and disability insurance benefits. (Dkt. 2). This matter was

reassigned to the undersigned on January 14, 2008. (Dkt. 3), and is currently before the Court on cross-motions for summary judgment.  (Dkt. 10, 12).

     B.     <u>Administrative Proceedings</u>

Plaintiff filed the instant claims on December 16, 2004, alleging that he became unable to work on January 26, 2004.  (Tr. at 44).  Plaintiff later amended his onset date to December 6, 2004.  (Tr. at 351).  The claim was initially disapproved by the Commissioner on March 8, 2005.  (Tr. at 33-37).  Plaintiff requested a hearing and, on April 30, 2007, plaintiff appeared with counsel before Administrative Law Judge (ALJ) Regina Sobrino, who considered the case *de novo*.  In a decision by the Appeals Council dated June 22, 2007, the ALJ found that plaintiff was not disabled.  (Tr. at 13-19).  Plaintiff requested a review of this decision on July 9, 2007.  (Tr. at 7-9).  The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on October 26, 2007, denied plaintiff's request for review.  (Tr. at 2-4); *Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 543-44 (6th Cir. 2004)*.

In light of the entire record in this case, I suggest that plaintiff's motion for remand be **GRANTED** and that the motions for summary judgment by both parties be **DENIED**.

Report and Recommendation
Cross-Motions for Summary Judgment
*Brown v. Comm'r*; No. 07-15418

## II.   STATEMENT OF FACTS

### A.   ALJ Findings

Plaintiff was 52 years of age at the time of the most recent administrative hearing.  (Tr. at 353).  Plaintiff's relevant work history included approximately 12 years as an automobile assembler, machine operator, product assembler, and automobile painter helper.  (Tr. at 55-60).  In denying plaintiff's claims, defendant Commissioner considered carpal tunnel syndrome, degenerative joint disease, and depression as possible bases of disability.  (Tr. 15-16).

The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since December 26, 2004.  (Tr. at 15).  At step two, the ALJ found that plaintiff's impairments were "severe" within the meaning of the second sequential step.  *Id*. At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations.  (Tr. at 16).  At step four, the ALJ found that plaintiff could not perform his previous work as an automobile assembler, machine operator, product assembler, and automobile painter helper.  (Tr. at 18).  At step five, the ALJ denied plaintiff benefits because plaintiff could perform a significant number of jobs available in the national economy.  *Id*.

Report and Recommendation
Cross-Motions for Summary Judgment
*Brown v. Comm'r*; No. 07-15418

C.    <u>Administrative Record</u>

      1.    Plaintiff's testimony and statements

During the hearing on April 30, 2007, plaintiff testified that he lived in two-story single family residence with his wife, daughter, and two-and-a-half year old granddaughter.  (Tr. at 353).  He said that he stopped working because he had rotator cuff surgery on his right shoulder in January of 2004 and then again in October of 2004.  (Tr. at 354).  Plaintiff said that he had trouble standing or walking and could only do either for 30-45 minutes because it "pulls on [his] shoulder and neck."  (Tr. at 354).  Lifting also posed a problem for him in that the most he could lift was a gallon of milk.  He attributed his lifting difficulty to carpal tunnel syndrome in both hands although he only had surgery in the left hand 12 years earlier.  (Tr. at 355).  Plaintiff also said he had trouble holding a pen or picking up coins because it was hard for him to squeeze or "feel to grip."  *Id*.  He had no trouble bending at the waist or at the knee and he was able to navigate stairs if he took his time.  (Tr. at 356).

      Plaintiff said he "splits" the normal household chores like cooking, cleaning, laundry and the like.  *Id*.  Socially, plaintiff belongs to a conservation club and goes to meetings six or more times a year.  He also visits friends and relatives and they visit him.  (Tr. at 357).  He has no trouble bathing or dressing himself and he

takes out the trash "sometimes."  *Id*.  Plaintiff's lawn is approximately an acre and a half and "once in awhile" he cuts the lawn using a riding mower.  *Id*.  He is able to drive the seven or eight miles into town "once in a great while" and he drives "up north" approximately three times a year.  (Tr. at 357-58).

At the time of the hearing, plaintiff said he treated with Dr. Awerbuch and Dr. Butman.  (Tr. at 358).  Some of the medications he takes make him tired.  He takes Paxil for depression, but does not see and has not seen a health care professional for that condition other than his family doctor.  (Tr. at 359).  Plaintiff said he was an "avid outdoorsman," but cannot do a lot of the things he used to, although he continued to go hunting after the alleged onset of his disability.  (Tr. at 357, 360).

Plaintiff's attorney asked him if he was having problems from his depression and he said "a little bit."  He recently had the Paxil dosage increased due to problems he was having with his wife.  (Tr. at 360-61).  In response to a question about paying attention or concentrating, plaintiff said he did have related problems that caused him not to remember things.  (Tr. at 360).  He said he had trouble lifting his right hand over his head, he could do it but it was hard, and he has difficulty opening lids on jars.  (Tr. at 361).

2.    Medical Evidence

The record in the present case includes medical records dating back to approximately 2002.  During relevant time period, Dr. Michael Butman was plaintiff's family doctor.[1]  Dr. Butman prescribed Paxil for plaintiff's depression since August of 2002.  (Tr. at 106).  In October of 2003, plaintiff complained about right shoulder pain to Dr. Butman.  (Tr. at 104).  Plaintiff was referred for an x-ray of the shoulder, which ultimately led to surgery for rotator cuff injury.  (Tr. at 116).  In November of 2003, test results for plaintiff caused Dr. Butman to suspect plaintiff might have leukemia.  (Tr. at 103).

Plaintiff sought treatment for his shoulder problem from Dr. Kurt A. Menapace beginning in November of 2003.  (Tr. at 189-90).  That treatment led to rotator cuff surgery on January 27, 2004.  (Tr. at 149-54).  Plaintiff seemed to do well from the surgery, but apparently re-injured his shoulder and had additional surgery in October of 2004.  (Tr. at 146-47).  The last records from Dr. Menapace are from December of 2004 and they show that plaintiff was progressing following his second shoulder surgery and he continued to have physical therapy.  (Tr. at 173).

---

[1] Over the time that plaintiff treated with Dr. Butman, he received treatment for miscellaneous matters not relevant to plaintiff's disability and those issues will not be noted here.

Report and Recommendation
Cross-Motions for Summary Judgment
*Brown v. Comm'r*; No. 07-15418

Regarding the possible leukemia, plaintiff went to see Dr. John K. Bartnick in November of 2003. (Tr. at 258). Plaintiff was diagnosed as having lymphocytic leukemia that was asymptomatic through the last visit with Dr. Bartnick, according to these records, on September 13, 2004. (Tr. at 255).

Dr. Butman was prescribing Paxil to plaintiff for depression, but plaintiff sought no other treatment for that condition. Following his application for benefits, plaintiff was asked to submit to a psychiatric/psychological evaluation, which was conducted by psychologists at Saginaw Psychological Services in February 2005. It was determined by those psychologists that plaintiff had "major depressive disorder, single episode, moderate severity." (Tr. at 208-12).

A Mental Residual Functional Capacity Assessment and a Psychiatric Review Technique were also completed following plaintiff's application.[2] The Mental RFC Assessment indicated that plaintiff was not significantly limited except as to (1) his ability to understand and remember detailed instructions, (2) his ability to carry out detailed instructions, and (3) his ability to maintain attention and concentration for extended periods. With respect to these areas, he was found to be "moderately limited." (Tr. at 222). In the explanation portion of the report, it

---

[2] The Mental RFC Assessment is not dated or signed, but it is assumed that it was completed at the same time as the PRT and by the same doctor, Robert Newhouse, based on the similarities in the way the two reports were prepared.

was noted that plaintiff "may have some concentration difficulties" and that he "may have trouble with complex detailed tasks [but he] retains [the] ability to so simple tasks on [a] sustained basis." (Tr. at 224). The PRT report concluded that plaintiff had "moderate" difficulties in maintaining concentration, persistence, or pace. (Tr. at 235). The consultant's notes in the report indicate inconsistencies between what plaintiff said and other evidence, which brings plaintiff's "credibility into question." (Tr. at 237).

Apparently, plaintiff began treating with Dr. Awerbach at some point although that date is not clear on this record. Dr. Awerbach submitted one report, which consisted of a single page Medical Source Statement dated May 21, 2007. (Tr. at. 348). Some parts of the statement are difficult to read, but it concludes that plaintiff can lift a maximum of 10 pounds occasionally, less than 10 pounds frequently, can stand/walk for at least two hours of an eight hour work day and sit for about six hours of an eight hour work day, but must alternate and has moderate limitations in the upper extremities regarding a push/pull function and mild limitations of that nature in the lower extremities. The statement also says that the limitations have existed since August of 2005 and that plaintiff's limitations would "disrupt" a regular a regular job schedule for 40 hours of a 160 hour work month. *Id.*

A Physical Residual Functional Capacity Assessment done in February of 2005 indicates that plaintiff can lift a maximum of 20 occasionally and 10 pounds frequently, stand or walk for six hours in an eight hour day, and sit for six hours in an eight hour day.  His ability to push or pull is limited in the upper right extremity.  Additionally, he should never climb ladders or scaffolds and should only occasionally have to crawl, but otherwise could frequently engage in other postural activities.  His manipulative limitations included only limitations in reaching overhead with his right upper extremity.  (Tr. at 214-21).

3.    Vocational expert

A vocational expert (VE),  Roxanne Minkus, attended the hearing and listened to the testimony of plaintiff.  The ALJ presented the VE with a hypothetical situation that included consideration of a person of plaintiff's age, education and work experience, who could not lift more than 5 pounds frequently and no more than 10 pounds occasionally, who could not push or pull with the dominant right arm, who could lift, carry, push or pull with both arms, who could not climb ladders, ropes or scaffolds, who should not crawl, who could occasionally climb stairs, stoop or crouch, who should not handle, finger or feel things more often than frequently, who should not have to reach above shoulder level, who should not be exposed to vibration or hazards, and who could do only

simple or routine work.  (Tr. at 362-63).  The VE said that such a person, who was

limited to sedentary work, could not do plaintiff's former work, but could do other

work in the regional or national economy.  (Tr. at 363-65).  Some of the positions

included as being available, under the limitations included in the hypothetical

example, were production line workers and bench assemblers.  (Tr. at 364-365).  In

response to a question by plaintiff's attorney, the VE said that a person who was

unable to "concentrate sufficiently such that it would result in the incompletion of

tasks" "20% of the time" would be precluded from work.  (Tr. at 366).

   B.   Parties' Arguments

      1.   Plaintiff's claims of error

Plaintiff's motion for summary judgment claims two errors on the part of the

ALJ.  The first claim of error is that the ALJ provided an inaccurate hypothetical to

the vocational expert and, thus, did not have substantial evidence for denying

plaintiff disability benefits.  The second claim of error is that the ALJ did not have

a proper basis for disregarding the opinion of Dr. Awerbach, who was a treating

doctor for plaintiff.

2.   Commissioner's counter-motion for summary judgment

Defendant's motion for summary judgment contends that the ALJ's hypothetical to the vocational expert properly reflected plaintiff's non-exertional limitations relating to concentration, persistence, and pace and, therefore, the ALJ had substantial evidence to support her decision denying plaintiff benefits. Further, defendant argues that the opinion of Dr. Awerbach was properly discredited by the ALJ because it was not supported by any diagnostic tests or clinical findings.

## III.   DISCUSSION

A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an

action in federal district court.  *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986)*.

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a

Report and Recommendation
Cross-Motions for Summary Judgment
*Brown v. Comm'r*; No. 07-15418

scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones, 336 F.3d at 475*. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen, 35 F.3d 1027, 1035 (6th Cir. 1994)* (citations omitted), citing, *Mullen, 800 F.2d at 545*.

The scope of this Court's review is limited to an examination of the record only. *Bass, 499 F.3d at 512-13*; *Foster v. Halter, 279 F.3d 348, 357 (6th Cir. 2001)*. When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992)*. "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec., 245 F.3d 528, 535 (6th Cir. 2001)*. There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec., 167 Fed.Appx. 496, 508 (6th Cir. 2006)* ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.")

(internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.,*

*198 Fed.Appx. 521, 526 (6th Cir. 2006)*.

      B.    <u>Governing Law</u>

          1.    Burden of proof

The "[c]laimant bears the burden of proving his entitlement to benefits."

*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

*accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq.*) and the

Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381

*et seq.*).  Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or

which has lasted or can be expected to last for a
continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

Step One:  If the claimant is currently engaged in
substantial gainful activity, benefits are denied without
further analysis.

Step Two:  If the claimant does not have a severe
impairment or combination of impairments, that
"significantly limits...physical or mental ability to do
basic work activities," benefits are denied without further
analysis.

Step Three:  If plaintiff is not performing substantial
gainful activity, has a severe impairment that is expected
to last for at least twelve months, and the severe
impairment meets or equals one of the impairments listed
in the regulations, the claimant is conclusively presumed
to be disabled regardless of age, education or work
experience.

Step Four:  If the claimant is able to perform his or her
past relevant work, benefits are denied without further
analysis.

Step Five: Even if the claimant is unable to perform his
or her past relevant work, if other work exists in the
national economy that plaintiff can perform, in view of

his or her age, education, and work experience, benefits
are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20
C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner
makes a dispositive finding at any point in the five-step process, the review
terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence
and severity of limitations caused by her impairments and the fact that she is
precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited
with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step
without a finding that the claimant is not disabled, the burden transfers to the
Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).
At the fifth step, the Commissioner is required to show that "other jobs in
significant numbers exist in the national economy that [claimant] could perform
given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at
241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

2.    Substantial evidence

If the Commissioner's decision is supported by substantial evidence, the
decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.    Analysis and Conclusions

Plaintiff argues that substantial evidence fails to support the findings of the Commissioner. In this Circuit, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Mullen, 800 F.2d at 545*. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Plaintiff's position is premised on the contention that (1) the hypothetical question posed to the vocational expert does not accurately describe plaintiff's limitations, and (2) the ALJ did not properly give deferential weight to the statements of Dr. Awerbach, a treating physician. Defendant's response to plaintiff's position is that the hypothetical is accurate in that it properly described plaintiff's functional limitations for the vocational expert and that the ALJ gave adequate reasons for not giving significant weight to the opinions expressed by Dr. Awerbach.

1.      Hypothetical Question

The hypothetical relied on by the ALJ in determining that plaintiff was not disabled included the limitation that the hypothetical person would only do work that was "simple and routine." (Tr. at 363). Plaintiff argues that the hypothetical was improper because it does not include the limitations that the ALJ found applicable to plaintiff. Specifically, the ALJ noted that there is "evidence of moderate impairment of functioning in the area of concentration, persistence, or pace." (Tr. at 16). It is not clear from the ALJ's findings if she is just acknowledging the existence of such evidence or making a finding of fact that plaintiff has "moderate" limitations as indicated. There is very little evidence in the record with respect to the functional limitations on plaintiff's ability to work based on his depression. In fact the only evidence in the record is the opinion of Dr. Newhouse, a consultative doctor, who said that plaintiff did have "moderate" limitations in the area of concentration, persistence or pace. (Tr. at 235). In light of the fact that this was the only evidence on the subject and it was not discredited by the ALJ, the undersigned finds that the ALJ must have concluded that plaintiff was limited in this area to a "moderate" degree. The ALJ favorably commented on Dr. Newhouse's report with respect to issues relating to activities of daily living and there is no reason to think the ALJ disagreed with the other portion of the

report regarding "moderate" limitations in concentration, persistence and pace. (Tr. at 16).

Included in the hypothetical was the limitation that the work must be "limited to doing work that is simple and routine."  (Tr. at 363).  A hypothetical must "accurately [set] forth the plaintiff's physical and mental impairments." *Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001).  In creating a hypothetical for a vocational expert, the ALJ is obligated to "translate the [plaintiff's deficiencies] into a set of specific limitations that are properly rooted in the administrative record."  *Bohn-Morton v. Comm'r of Soc. Sec.*, 389 F.Supp.2d 804, 807 (E.D. Mich. 2005).

In *Smith*, the ALJ had determined that plaintiff "often" suffered "deficiencies of concentration, persistence or pace" and, in the hypothetical for the vocational expert, included a limitation that restricted the jobs to those that were "routine and low stress, and do not involve intense interpersonal confrontations [or] high quotas."  The *Smith* court found that those deficiencies were properly incorporated into the hypothetical and affirmed the ruling in favor of the Commissioner.  That acceptable hypothetical included limitations as to the complexity of the work and the pace or rate of the work.  *Smith* was decided when the regulations relating to concentration rated that factor based on frequency as

Report and Recommendation
Cross-Motions for Summary Judgment
*Brown v. Comm'r*; No. 07-15418

opposed to the current regulations that use a five level severity rating of (1) none, (2) mild, (3) moderate, (4) marked and (5) extreme.  *See* 20 C.F.R. § 404.1520a(c)(4).  It is not clear that the "often" rating in *Smith* is the equivalent of the "moderate" rating in the present case.  However, it is clear in this district that the hypothetical that includes a limitation of "simple" jobs does not properly reflect the limitation of someone with "moderate" deficiencies in concentration, persistence or pace.  In *Benton v. Comm'r of* Soc. Sec., 511 F.Supp.2d 842 (E.D. Mich. 2007) the court adopted the recommendation of a magistrate judge that a limitation in a hypothetical to "simple, routine, repetitive tasks" was not adequate to reflect a "moderate" deficiency in concentration, persistence, or pace.  The magistrate judge had found that such a limitation did not address both of the components of concentration, persistence, or pace.  One of those components was the level of sophistication of the task while the other component was the frequency of performing the task.  *Id.* at 846.  The failure in *Benton* is the same failure that exists in the present case.  Similarly, a "simple jobs" limitation in a hypothetical was not detailed enough to encompass a "moderate deficiency in concentration, persistence or pace" in *Alhin v. Comm'r of Soc. Sec.*, 2008 WL 2743954 (E.D. Mich., 2008).  The hypothetical approved in *Smith* included both a complexity

component and a pace component (restriction against quotas) which, the court found, adequately described the functional limitations of the plaintiff.

Defendant defends the finding of the ALJ by citing to *Howard v. Massanari, 255 F.3d 577 (8th Cir. 2001)*.  Admittedly. the court there concluded that a hypothetical that included only a "simple, repetitive jobs" limitation was sufficient where the plaintiff "often" experienced deficiencies of concentration, persistence or pace.  However, that decision from outside the Sixth Circuit is simply not as persuasive as those cases previously cited from this district.  The principle stated in *Smith* is that the hypothetical must reflect the plaintiff's physical and mental impairments and that principle is satisfied only where complexity **and** pace are included in the hypothetical given the evidence considered by the ALJ.

It should also be noted that this is not strictly an academic issue because the VE included "assembly line" type jobs in those that she thought would satisfy the hypothetical limitations presented by the ALJ.  (Tr. at 364-65).  Additionally, the VE, in response to a question posed by plaintiff's counsel, indicated that an incompletion rate of 20% would preclude at least some of the jobs she had identified as being available.[3]

---

[3] In *Bankston v. Comm'r of Soc. Sec.*, 127 F.Supp.2d 820 (E.D. Mich. 2000) the court adopted a relatively rigid 50% occurrence rate for problems that were considered "often."  Some might say, as plaintiff suggests here, that "moderate" is

Given the inadequacy of the hypothetical question posed to the VE here, the testimony of the vocational expert could not, therefore, serve as substantial evidence supporting the ruling of the ALJ.

2.      Treating Physician

The second issue raised by plaintiff in his motion for summary judgment is the failure of the ALJ to credit the statements of Dr. Awerbach.  In weighing the opinions and medical evidence, the ALJ must consider relevant factors such as the length, nature and extent of the treating relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's evidentiary support, and its consistency with the record as a whole.  20 C.F.R. § 404.1527(d)(2)-(6).  Therefore, a medical opinion of an examining source is entitled to more weight than a non-examining source, and a treating physician's opinion is entitled to more weight than a consultative physician, who only examined the claimant one time.  20 C.F.R. § 404.1527(d)(1)-(2).  A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion,

---

the new "often" because they appear at the same midpoint of the five level rating but there is little authority for that.  The numerical aspect of *Bankston* has been questioned in subsequent cases, *see Benton*, 511 F.Supp.2d at 847, and is not adopted here.  However, like the court in *Benton*, it is hard to imagine a "moderate" problem occurring less frequently than 20% of the time which, according to the VE in the present case, would be work preclusive, particularly if a potential job had quotas.

supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight." Soc.Sec.R. 9602p, 1996 WL 374188, *5 (1996). The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." Wilson, 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2). A physician qualifies as a treating source if the claimant sees her "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." 20 C.F.R. § 404.1502. "Although the ALJ is not bound by a treating physician's opinion, 'he must set forth the reasons for rejecting the opinion in his decision.'" Dent v. Astrue, 2008 WL 822078, *16 (W.D. Tenn. 2008) (citation omitted). "Claimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." Smith v. Comm'r of Social Security, 482 F.3d 873, 875 (6th Cir. 2007). "The opinion of a non-examining physician, on the other hand, 'is entitled to little weight if it is contrary to the opinion of the claimant's treating physician.'" Adams v. Massanari, 55 Fed.Appx. 279, 284 (6th Cir. 2003).

With respect to the ALJ's consideration of Dr. Awerbach's opinion that plaintiff's "conditions would likely result in disruption of a regular work schedule about four days per month," the ALJ noted that the opinion is not supported by clinical findings, diagnostic test results, or the level of activities reported." (Tr. at 18). The one-page report from Dr. Awerbach does not include any information regarding how long the doctor had been treating plaintiff, what tests were performed on plaintiff, what the results of any tests were, or what the basis of any opinion contained in the report was. (Tr. at 348). It is even difficult to consider Dr. Awerbach a "treating" doctor because there is no evidence that he did treat plaintiff. Based on the lack of any supporting documentation for Dr. Awerbach's opinion, the ALJ would not be required to say more than she did in discrediting the doctor's opinion regarding plaintiff's limitations. The ALJ is only required to give weight to a treating doctor's opinion if that opinion is supported by sufficient clinical findings and is consistent with the remaining evidence. *Bogle v. Sullivan, 998 F.2d 342, 347-48 (6th Cir. 1993)*.

## IV.   RECOMMENDATION

The District Court is permitted, pursuant to 42 U.S.C. § 405(g), to enter a judgment reversing the findings of the Commissioner and remanding for a hearing. In light of the above determination that the ALJ did not properly incorporate all of

plaintiff's limitations in the hypothetical presented to the vocational expert, it is **RECOMMENDED** that the case be **REMANDED** under sentence four of 42 U.S.C. § 405(g) for further consideration. *Faucher v. Sec'y of Health and Human Serv.*, 17 F.3d 171, 175-76 (6th Cir. 1994).

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 10 days of service, as provided for in 28 U.S.C. § 636(b)(1) and Local Rule 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Within 10 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response must not exceed 20 pages in length unless such page limit is extended by the Court. The response must address specifically, and in the same order raised, each issue contained within the

Report and Recommendation
Cross-Motions for Summary Judgment
*Brown v. Comm'r*; No. 07-15418

objections by motion and order.  If the Court determines any objections are without

merit, it may rule without awaiting the response to the objections.

                                          s/Michael Hluchaniuk
Date: February 13, 2009                   Michael Hluchaniuk
                                          United States Magistrate Judge

### CERTIFICATE OF SERVICE

    I certify that on _____, I electronically filed the foregoing paper with
the Clerk of the Court using the ECF system which will send electronic notification
to the following: Mikel E. Lupisella, Susan K. DeClerq, and the Commissioner of
Social Security.

                                          s/Darlene Chubb
                                          Judicial Assistant